UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMI CONDON, | : | |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| VS. | : | NO. |
| | : | |
| ELIM PARK BAPTIST HOME, INC., | : | |
| | : | |
| DEFENDANT. | : | JULY 30, 2017 |

## C O M P L A I N T

1. This is an action for money damages to redress the deprivation by the defendant of rights secured to the plaintiff by the laws of the United States and the State of Connecticut.  The defendant has subjected the plaintiff to, inter alia, violation of the rights secured to her by the provisions of the Americans with Disabilities Act of 1990, As Amended, 42 U.S.C. §§ 12111, et seq.;  Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e; violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, Sections 46a-58(a) et seq. of the Connecticut General Statutes; and to the intentional infliction of emotional distress, in contravention of the Constitution and laws of the United States and the Constitution and laws of the State of Connecticut.

2.  Jurisdiction of this Court is invoked under the provisions of Sections 1331, 1337, 1343, 1343(3) and/or 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

3.  At all times mentioned herein, the plaintiff, Jami Condon, was and is an adult citizen of the United States, residing in New Haven, Connecticut.  The plaintiff is female.

4.  At all times relevant to the instant complaint, the defendant, Elim Park Baptist Home, Inc., was and is an employer which employs 430 persons.

5.  At all times relevant to the instant complaint, the defendant conducted business at 140 Cook Hill Road, Cheshire, Connecticut.

6.  At all times relevant to the instant complaint, the plaintiff was employed by the defendant in its Housekeeping Department.

7.  The plaintiff was hired by the defendant on December 3, 2013.

8.  The plaintiff is a qualified individual with a disability.  She suffers from the condition of essential tremor, which, inter alia, causes her to experience bodily tremors, which affect the plaintiff's ability to use her hands, to eat, drink, speak, walk, write and other essential bodily functions.

9.  The plaintiff can, however, perform the essential functions of her job with or without reasonable accommodation.

10. The defendant is aware of the plaintiff's disability. The plaintiff obtained the position with the defendant through the Bureau of Rehabilitation Services of the State of Connecticut Department of Rehabilitative Services.

11. The plaintiff's work has always been excellent. In 2014 and 2015, she received a performance rating review of "highly accomplished".

12. The plaintiff's work environment, however, has been hostile from the beginning of her employment.

13. From the outset, other employees of the defendant mistreated the plaintiff, avoided her, refused to work with her and treated her differently due to her disability. The plaintiff was falsely accused of not having performed her work duties.

14. Joyce, a CNA with whom the plaintiff worked and employee of the defendant, was aware of the plaintiff's disability.

15. The CNA Joyce told the plaintiff that the plaintiff "smelled like shit." This was done in front of another coworker.

16. The CNA falsely reported to the RN with whom she and the plaintiff worked that the plaintiff was not mopping the floors. The RN questioned the plaintiff, who informed her that this was not true, and that she was performing her duties fully and correctly.

17.  Thereafter, the plaintiff found human feces on the floor which she was forced to clean up.  This should have been done by the CNA, but was left for the plaintiff to do to humiliate and belittle her.

18.  The plaintiff also was forced to clean the toilets of residents, on which human feces had been deliberately smeared by other employees of the defendant.  This was done to further humiliate and embarrass the plaintiff, and to cause her distress and upset in the workplace.

19.  The plaintiff reported the conduct to her Manager, Steve Wilson, who was the Supervisor in charge of the defendant's Housekeeping Department.

20.  The plaintiff also reported the disability based harassment to the Carol Walker, the defendant's Director of Human Resources.

21.  Wilson and Walker are agents, officers or employees of the defendant, with supervisory duties.  Their actions as stated in the instant Complaint were undertaken pursuant to their positions with the defendant.  The defendant has adopted, authorized or ratified the conduct of Wilson and Walker.  As such, the defendant is liable for the conduct, action and inaction of Wilson and Walker.

21.  Walker instructed the plaintiff that she was not to not bring such complaints to the defendant or to her attention ever again.  Walker told the plaintiff that she was not to speak about her present complaints, or any other complaints, to anyone.

22. The plaintiff realized that the defendant, through its Human Resources Department or otherwise, was not going to resolve or address the situation.

23. The plaintiff asked in writing for a copy of her report, but the defendant refused.

24. The hostile and disparate treatment continued at the workplace unabated, from the beginning of her employment through to the end thereof.

25. During that time, the plaintiff was never given a cleaning cart of her own and was forced to use other employees' carts to perform her job. The carts that the plaintiff was given to use were never cleaned. Mop heads were not sent to the laundry to be cleaned, and trash was not emptied. This created a dangerously unsanitary and unhealthy situation, and made the closets where the carts were stored highly offensive smelling.

26. The plaintiff reported this conduct on several occasions to her supervisor Wilson. The plaintiff expressly complained of the adverse health impact that the intentionally unsanitary conduct was having on her.

27. The defendant did nothing in response to the plaintiff's complaints. In order for the plaintiff to do her job correctly she was forced to spend time cleaning the carts, the equipment and emptying the trash left for her before she could even begin to do her work.

28. The defendant also refused to provide the plaintiff with the proper equipment to correctly perform her job in a safe and sanitary manner.

29. The plaintiff's coworkers were also sabotaging the cleaning equipment used by the plaintiff, keeping essential items from her, in addition to leaving the carts filthy and unsanitary.

30. The plaintiff again reported this to her supervisor Wilson and again nothing was ever done about it.   This extra work load for the plaintiff cleaning the cart every time she worked caused her additional stress and made her work day longer, and made completing her work tasks more difficult.

31. The hostile and disparate conduct described herein continued for the entire time that was employed at the defendant, from December, 2103 to April 2016.

 32. Also within this time, the defendant's CNAs were unfriendly toward the plaintiff, treated her very coldly, and were not willing to interact with her in conversation or otherwise.

33. While the plaintiff was working, one of the CNAs asked the plaintiff to scrape feces off of her shoe - which the plaintiff did.  The CNA kept coming back to the plaintiff, three times, insisting that the plaintiff keep cleaning the feces covered shoe to her satisfaction.  This is not a requirement of the plaintiff's job.

34. On another occasion, the plaintiff was being shown the job of a coworker, for whom she was going to fill in while the other employee was out.   The coworker

asked the plaintiff is she was disabled, and made lengthy and detailed inquiry into the plaintiff's disability.

35.  Shortly thereafter, the coworker came into the housekeeping supply room, which is right next to plaintiff's supervisor's office.  The coworker spoke loudly to the plaintiff, so that other employees could hear what was being said.  She asked the plaintiff to cover for her that weekend, and then loudly said: "Oh, you can't do it, you have a disability."  The plaintiff was embarrassed and humiliated by the unnecessary and malicious comment.

36.  In another incident, two of the plaintiff's coworkers, Sue and Anna, also made disparaging remarks about the plaintiff's disability. They stated: "It's hard, isn't it?" and "Doesn't the state help you?"

37.  On several occasions the plaintiff noticed that her water bottle had been moved closer to the dirty toilet bucket on the cleaning cart and dirty rags were put around it.  On another occasion the plaintiff's coffee cup had been sprayed with cleaning detergent.

38.  The conduct at the defendant was severely impacting the plaintiff's health.  The plaintiff sought treatment from her primary care physician, and inquired about a medical leave of absence from employment with the defendant.

39.  Beginning in January 2016, the retaliation, bullying and harassing escalated further.  The plaintiff's coworkers talked behind the plaintiff's back and

would not include her in any conversations. They also started isolating the plaintiff in the lunchroom. The plaintiff found it very intimidating to work in this kind of environment every day.

40. On or about March 16, 2016, the plaintiff was given a work order to clean a vacated apartment. While cleaning the empty apartment a male electrician, who is an outside contractor, entered the apartment. The plaintiff was not told that anyone else would be working in the apartment.

41. Therein, the male persisted in asking the plaintiff questions which were sexually suggestive, offensive and personal, including asking her about her sexual preferences. The plaintiff felt very uncomfortable and alarmed by this conduct.

42. Rob Costa, Administrator of Independent Living, a Supervisor for the defendant, witnessed the conduct yet did and said nothing.

43. On or about March 20, 2016, the plaintiff again encountered CNA Joyce in the workplace. The CNA stood in front of the plaintiff and deliberately dropped a container of apple sauce on the floor, and demanded that the plaintiff clean it up. Out of fear, the plaintiff complied. The plaintiff reported this incident to defendant's Human Resources Department.

44. On or about March 24, 2016, the plaintiff was working, and again encountered the electrician who had previously subjected her to sexual harassment. As she walked by the electrician and his coworker, the two men were leering and

staring at the plaintiff in a sexual manner, which made her very uncomfortable and afraid.

45. On or about March 24, 2016, two of the plaintiff's coworkers, Sue and Anna, gave the plaintiff the wrong apartment numbers to clean. When the plaintiff realized that they were the wrong numbers, she inquired of the two what the right apartment numbers were. Both employees started yelling at the plaintiff, repeating the apartment numbers over and over again as if the plaintiff was unable to understand them. They were bullying and speaking very harshly to the plaintiff, and demeaning her. The plaintiff found this treatment to be very unfair and hurtful.

46. The plaintiff's son, who also worked for the defendant, began to experience harassment for his relationship to the plaintiff. He too complained about the mistreatment.

47. On or about April 7, 2016, the plaintiff again complained to her Supervisor Wilson and to HR Department Head Walker about the events described herein. The plaintiff informed the defendant that the work environment was such that she could no longer work there safely, free of overwhelming hostility and without extreme threat to her personal well being. The plaintiff demanded that she be allowed to address her concerns to a higher level of the defendant.

48. On or about May 11, 2016, Administrator of Health Services of the defendant Chris Newton scheduled a meeting with the plaintiff and her son. Newton

is an agent, officer or employee of the defendant, with supervisory duties.  His actions as stated in the instant Complaint were undertaken pursuant to his position with the defendant.  The defendant has adopted, authorized or ratified the conduct of Newton.  As such, the defendant is liable for the conduct, action and inaction of Newton.

49.  At that meeting, Newton refused to address the plaintiff's complaints of discrimination and hostile work environment.  The plaintiff was thus no longer able to work at the defendant safely and without harassment and discrimination.  As such, the defendant constructively terminated the plaintiff.

50.  The defendant has discriminated against the plaintiff, failed to provide a work environment free of hostile harassment and intimidation, terminated her, and retaliated against her on the basis of her disability or that it perceives her as disabled, and in retaliation for the plaintiff's complaints about such unlawful conduct.

51.  The plaintiff has exhausted her administrative remedies prerequisite to suit, and has sought and received a Notice of Right To Sue letter from the United States Equal Employment Opportunity Commission and a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities.

52.  In the manner described above, the defendant has violated the rights secured to the plaintiff by the provisions of the Americans with Disabilities Act of 1990, As Amended, 42 U.S.C. §§ 12111, et seq.

53. As a result of the actions of the defendant, the plaintiff has been subjected to a severe and pervasive hostile work environment, has suffered loss of her employment; loss of her rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing; and has suffered severe emotional and mental distress.

**COUNT TWO**

1.-51.  Paragraphs 1-51 of Count One are hereby made Paragraphs 1-51 of Count Two.

52. The conduct of the defendant constitutes violation of the rights secured to the plaintiff by the provisions of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A.§ 2000e.

53. As a result of the actions of the defendant, the plaintiff has been subjected to a severe and pervasive hostile work environment, has suffered loss of her employment; loss of her rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing; and has suffered severe emotional and mental distress.

**COUNT THREE**

1.-51.  Paragraphs 1-51 of Count One are hereby made Paragraphs 1-51 of Count Three.

52.  The conduct of the defendant constitutes violation of the rights secured to the plaintiff by the provisions of the Connecticut Fair Employment Practices Act, Sections 46a-60(a) et seq. of the Connecticut General Statutes.

53.  As a result of the actions of the defendant, the plaintiff has been subjected to a severe and pervasive hostile work environment, has suffered loss of her employment; loss of her rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing; and has suffered severe emotional and mental distress.

**COUNT FOUR**

1.-51.  Paragraphs 1-51 of Count One are hereby made Paragraphs 1-51 of Count Four.

52.  The actions of the defendant were extreme and outrageous.

53.  The actions of the defendant was intentional.

54.  The actions of the defendant was likely to cause emotional distress, and that emotional distress was severe.

55. The actions of the defendant constitutes the intentional infliction of emotional distress.

56. As a result of the actions of the defendant, the plaintiff has been subjected to a severe and pervasive hostile work environment, has suffered loss of her employment; loss of her rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment opportunities, advancement and training; loss of self esteem, peace of mind, emotional and physical well being; loss of reputation and standing; and has suffered severe emotional and mental distress.

**WHEREFORE**, the plaintiff claims judgment against the defendant as follows:

A. Compensatory damages, including but not limited to back pay, lost overtime pay, lost vacation pay, lost seniority and other employment-related benefits; and compensation for other economic losses, including but not limited to emotional distress, physical illness and attorney's fees;

B. Punitive damages;

C. Costs of this action;

D. Reasonable attorney's fees;

E. Such other relief as this Court shall consider to be fair and equitable.

**CLAIM FOR JURY TRIAL**

The plaintiff claims trial by jury in this case.

                THE PLAINTIFF


                BY_____/s/_____
                      WILLIAM S. PALMIERI
                      Law Offices of William S. Palmieri, L.L.C.
                      Federal Bar No. ct14361
                      129 Church Street,  Suite 405
                      New Haven, CT 06510
                      PHONE: (203) 562-3100
                      FAX:  (203) 909-6006
                      EMAIL:  wpalmieri@hotmail.com
                      Her Attorney